W. W. GARNER, Appellant, v. J. F. KRATZER, Appellee.

**Appeal:** DIRECTION OF VERDICT: REVIEW OF EVIDENCE. In determining
1 whether a verdict was properly directed the appellate court will not pass upon the credibility of the witnesses or the weight to be given their testimony, but the evidence will be construed and its fullest probative force given in favor of the party against whom the verdict was directed.

**Corporations:** SALE OF STOCK: TENDER: WAIVER. Where defend-
2 ant contracted to sell plaintiff certain shares of corporate stock at a valuation shown by an inventory, plaintiff to pay interest on such valuation and part of the principal each year, the earnings of the stock if declared as dividends to be applied on the purchase price, a refusal by defendant to disclose the amount of the dividends excused plaintiff from tendering the balance due before bringing suit for damages, because of failure to deliver the stock.

**Same:** EVIDENCE. Under the provisions of the contract in this case
3 evidence of dividends declared prior to repudiation of the contract by defendant was admissible.

*Appeal from Polk District Court.*—HON. JAMES P. HEWITT,
Judge.

TUESDAY, JANUARY 27, 1914.

OPINION states the facts.—*Reversed* and *Remanded.*

*Franklin & Miller* and *E. D. Perry,* for appellant.

*Dudley & Coffin,* for appellee.

GAYNOR, J.—This is an action to recover damages of
the defendant, Kratzer, based on alleged breach of con-
tract to deliver to the plaintiff certain shares of stock in
the Kratzer Carriage Company, a corporation doing busi-
ness in the city of Des Moines.

It appears that, at the time the alleged contract was
entered into, the plaintiff, W. W. Garner, was a traveling
salesman and was engaged by the Kratzer Carriage Company
in that capacity, and the following written contract entered
into:

Sept. 6, 1901.  Mr. W. W. Garner, New Sharon, Iowa:
If you wish to engage with us you can commence not later
than Nov. 1st, and as much earlier as you can get released
from your contract with Sechler & Co.  We will pay you
$1,500.00 for one year's work, $125.00 payable each month
and your necessary traveling expenses while on the road,
you to give us your exclusive time and best efforts to further
the sale of our vehicles and to assist us all you can in making
collections, in securing new customers, and opening up new
territory, such as we may find necessary to look after.  We
will ask you from time to time to look after salesmen in dif-
ferent parts of the territory at any point that appears to
need looking after the most.  We will ask you to consult with
the head of our company from time to time, and do whatever
it decides best for the interest of the company.  If it can be
so arranged, we would prefer that you begin with us by Sept.

10th.   Yours truly, Kratzer Carriage Company, per J. F. Kratzer, Prest.   Accepted, W. W. Garner.

Defendant, J. F. Kratzer, was in the active management of the affairs of the corporation, the Kratzer Carriage Company, and as such employed the plaintiff and entered into the written contract above set out for and in behalf of the Kratzer Carriage Company.   At the time of the negotiations for employment and preparation and signing of the above contract of employment, defendant, Kratzer, for and on his own behalf, signed and delivered to the plaintiff the following written instrument:

Des Moines, Iowa, Sept. 6, 1901.   Mr. W. W. Garner, New Sharon, Iowa—Dear Sir:   If you wish to take stock in our company I will agree to deliver to you thirty shares of our capital stock, $100.00 per share, at the price that our inventory of October 15, 1901, shows the stock and surplus earnings to be actually worth, taken from our actual inventory.   You could pay me interest on the stock and earnings or surplus at the rate of six per cent. per annum, payable annually, and an annual payment of one-sixth of the actual value each twelve months, the earnings of said stock if declared surplus shall remain with each share as surplus and if declared as a dividend shall apply on each share as payment. I will further agree to deliver stock in amounts of five or more shares at any time that payment is made.   You will be required to attend all meetings of our company as soon as you become a stockholder.   Yours truly, J. F. Kratzer, Accepted, W. W. Garner.

It appears that, after his employment under the written contract above set out, the plaintiff continued to serve the Kratzer Carriage Company, under said contract, for about ten months, at which time he left their employ, and has never since been associated or connected with them in any capacity; that, at the time the above instruments were executed, J. F. Kratzer was the owner of a large number of shares of the capital stock of the Kratzer Carriage Company;

that on the 15th day of October, 1901, the Kratzer Carriage Company made an inventory, as provided in said written agreement; that the total amount of stock issued and outstanding at that time was 300 shares of $100 a share; that the total assets of the company, as shown by the inventory, was $140,237.74; that the net assets of said corporation was $82,854.12; that thirty shares of the capital stock of the said corporation, as fixed by said inventory on October 15, 1901, was $8,285.41.

Plaintiff claims that subsequent to the execution of said contract, and prior to the commencement of this action, dividends had been declared, both in money and in stock, and the corporation increased its capital stock from $30,000 to $100,000, and that all the increase in the capital stock was stock dividends, and was issued to the original holders of the stock in said corporation as dividends, and the plaintiff alleges that the defendant, being then the holder and owner of said thirty shares of stock agreed to be sold to this plaintiff, did receive at said time the stock dividends thereon in the amount of several shares of paid-up capital stock; that the actual value of the shares of stock so issued to the defendant as stock dividends was in excess of the par value thereof; that the amount of dividends declared by the Kratzer Carriage Company, both as stock and cash dividends upon said thirty shares held by the defendant, was greatly in excess of the price which plaintiff agreed to pay therefor; and that by reason thereof the stock mentioned in the contract between Kratzer and the plaintiff was fully paid for. Subsequent to the making of said contract, and in the year 1903, and also in the year 1906, the plaintiff demanded of the defendant, Kratzer, the amount owing to defendant upon said contract which the defendant neglected to give. On the 29th day of November, 1909, he served upon the defendant Kratzer the following written demand:

To J. F. Kratzer. To Kratzer Carriage Company, by

J. F. Kratzer, President. W. W. Garner does hereby demand of you and each of you a statement of the amount due you or either of you by virtue of a written contract entered into by and between you and W. W. Garner for the purchase of one-tenth of the capital stock of the Kratzer Carriage Company, at the invoice on or about the 15th day of October, A. D. 1901, together with six per cent. interest thereon from said date, less all dividends declared on all of said one-tenth of stock of said Kratzer Carriage Company. You are hereby notified that the reason and purpose of this demand is that said W. W. Garner does desire to make tender of the amount due upon said contract unto said J. F. Kratzer or Kratzer Carriage Company, or either of them. Dated at Des Moines, Iowa, this 27th day of November, A. D. 1909. W. W. Garner.

In the year 1909, and after the written demand, the plaintiff again called on Kratzer, and was then, for the first time, advised that Kratzer did not intend to carry out the provisions of said contract. The plaintiff further says that the actual cash value per share of the capital stock of said corporation in the year 1909, at the time when defendant breached said written contract, was $245.25 per share. Wherefore the plaintiff demanded judgment against the defendant for damages for the breach of said contract in the sum of $30,000. The defendant, answering said petition, denies each and every allegation thereof, except the execution of the written contracts, hereinbefore set out, and the service of the written demand on November 29, 1909, and that between the commencement of this suit in September, 1901, dividends were declared upon the capital stock. Defendant further interposes other affirmative defenses which are not material here in view of the disposition made of the case in the court below. Upon the issues thus tendered, the cause was tried to a jury. At the conclusion of the plaintiff's testimony, the court directed a verdict for the defendant, which being returned, the court entered judgment thereon, dismissing plaintiff's petition with costs. From the judgment so entered, the plaintiff appeals.

The plaintiff being called as a witness in his own behalf, testified, in substance, as follows:

A few days after the 1st of November when I entered the employ of Kratzer Carriage Company under the written contract, the defendant, Kratzer, told me that the inventory of October 15, 1901, put it up between $82,000 and $83,000, and that the stock he expected me to pay for would be thirty shares, one-tenth of the whole. I don't remember the exact figures. He said it was not necessary for me to pay now; that I had better keep my money and build a home for my family; that he was satisfied that the earnings and the dividends would pay for the stock, and he would be willing to carry me on the stock if he could realize 6 per cent. on his money. In 1904, I had a conversation with him on the south side of Walnut street, between Fourth and Fifth. Mr. Core was with me. We met Mr. Kratzer, and he said: 'How do you do, Garner? I understand that you want the stock.' I said, 'Yes, I want the stock.' He said, 'Well, when you show me the money, you can have it.' I said, 'Well, whenever you tell me how much it is, the money is ready for you.' I had another conversation with him in 1906 in the carriage factory. I told Mr. Kratzer then that, if he would tell me how much I owed him, I would take up the stock. He gave me no statement of the amount, but said I would have to show him the money before he would make an accounting or a statement. In 1909, in the Kratzer Carriage Company's office, I told him that Mr. Murray had told me that he said I had no stock in the concern, nor any rights, nor any contract for stock. He said: 'You haven't. If you show me that we owe you anything, the Kratzer Company is good and will pay it.' I told him then that I was ready, able, and willing to take up the stock at any time I could find how much it was. I was then ready, able, and willing to take it up. Mr. Kratzer never transferred any stock to me, nor did he ever inform me how much I owed him on this contract. The reason I didn't pay him was that I didn't know how much to pay him.

On cross-examination, he stated that Mr. Kratzer handed him a slip of paper containing the amount of the inventory in 1901.

At that time I told him it was satisfactory to me; that I had some money and would like to clean it up. He said it was not necessary, as the contract provided for 6 per cent. interest, and if he got 6 per cent. on his money it would be satisfactory to him. I had then about $4,000. I knew, however, at the time that the inventory would show me the amount due for thirty shares of stock at any time that I wanted to pay for it. He told me not to pay for it, but to keep the money and finish my property, the property I was building on University avenue; that I would feel better if I had a home for my family. That is all the conversations we had. This was in November, 1901. There was no conversation about the stock when I left the employ of the company.

L. A. Symres, called for the plaintiff, testified, in substance, that he was a practicing attorney and lived in Des Moines; that in January or February, 1903, the plaintiff brought him a contract letter and asked him to look it over; that the plaintiff instructed him to see Mr. Kratzer concerning it. "I wrote Mr. Kratzer, and he came to my office in response to the letter. He asked me if Garner had left the money with him to take up the stock. I said, 'No.' He said, 'The stock is ready for Garner whenever he has the money.' He didn't tell me what was due."

J. E. Core, called for the plaintiff, testified substantially to the conversation detailed by the plaintiff as occurring on Walnut street between Fourth and Fifth, in January or February, 1904.

C. S. Walker, called for the plaintiff, testified: That he was the president of the Kratzer Carriage Company. That he became president in October, 1908. Prior to that, he was secretary for sixteen or seventeen years. The defendant, Kratzer, was manager from 1890 until he retired in 1908. Thereupon the plaintiff sought to show by the witness Walker that, since 1902 up to 1909, the company had declared dividends upon its stock and the amount of such dividends. These questions were all objected to and the objections sustained by the court. Walker was, however, permitted to testify that

the carriage company was reorganized in the latter part of 1910. That there had been a change in the amount of outstanding stock in the year 1906. The amount of shares was then increased from 300 to 1,000. The face value of a share in 1901 was $100, and that was also the face value in 1909. Thereafter the plaintiff sought to show by this witness that the increase in the shares of stock was a stock dividend declared by the Kratzer Carriage Company, that the additional stock was not paid for in money, but was issued as stock dividend, that no new property was brought into the concern, and that the increased stock represented the earnings of, or dividends declared on, the stock theretofore issued. The witness further testified that he did not know the market value of stock of the Kratzer Company in 1909; that the Kratzer Company earned money in 1909, approximately $35,000 net.

J. F. Kratzer, the defendant, was called on the part of the plaintiff, and it was sought to show by him whether or not the company made any net earnings in 1902, up to and including 1909. This was objected to and the objection sustained. It was sought by this witness also to show whether or not the Kratzer Carriage Company declared any dividend during these years. This was objected to and objection sustained. He was permitted, however, to testify that he did not know whether the stock of the company had any market value in 1906; that he did not know the market value in 1909; that there were no sales in the market of this stock. He testified further that in 1909 there were a thousand shares outstanding; that its par value was $100 per share; that its book value was $245 per share; that there was no way of getting at the cash value unless it was offered for sale. He was asked this question: ''Was the additional stock which was issued by the company about five or six years ago issued to the original holders of the stock as stock dividends?'' This question was objected to and sustained. The plaintiff was recalled as a witness for himself, and testified: ''I did not

ask Mr. Kratzer for the inventory of 1902. He gave me just the footings of the inventory of 1901; that he ·understood that whatever dividends were declared on the stock was to be credited to him on the stock; that he never tendered or paid Mr. Kratzer any money or other property for the stock.''

This was practically all of the testimony offered and received upon the issues tendered, and, upon the conclusion of the testimony upon the motion of the defendant, the court directed the jury to return a verdict for the defendant.

Unfortunately for the defendant in this case, we are not permitted to pass upon the credibility of the witnesses or the weight to be given to their testimony, and it is not

1. APPEAL: direction of verdict: review of evidence.

for us to say that much of the testimony upon which the plaintiff predicates his right to recovery bears the earmarks of improbability, and lacks many of the essential elements of probability. Under a motion for a directed verdict, the testimony before the court must receive its most favorable construction, must be given its fullest probative force upon the issues tendered.

Under the evidence offered and admitted, it appears that from the time of the making of the contract for the stock up to 1909, defendant Kratzer never repudiated the contract or

2. CORPORATIONS: sale of stock: tender: waiver.

denied plaintiff's right to a full performance thereof. It appears from this testimony that the plaintiff was always ready, able, and willing to perform his part of the contract, and, so far as the record discloses, would have performed his part of the contract had it not been for the conduct of the defendant, as this record makes it to appear. The plaintiff testified that a few days after the 1st of November, 1901, the defendant said to him that the stock he expected the plaintiff to pay for would be 30 shares; that it was not necessary for him to pay then; that he had better keep his money; that he (the defendant) would be satisfied with 6 per cent. on his money; that he was satisfied that the earnings and dividends would

pay for the stock; that frequently thereafter the plaintiff asked the defendant (with a view, he says, of taking the stock into his possession) how much was due upon the stock, how much it was necessary for him to pay to secure the stock; and that the defendant always refused to make any statement to him of the amount necessary to discharge the indebtedness and secure the stock.

The contract upon which the suit is brought, after being accepted by the plaintiff, would read as follows: ''I will deliver to you thirty shares of our capital stock, $100.00 per share, at the price that our inventory of October 15, 1901, shows the stock and surplus or earnings to be actually worth, taken from our actual inventory.'' Plaintiff's agreement, as expressed in said contract, is: ''I will pay interest on the stock and earnings or surplus at the rate of six per cent. per annum, payable annually; and an annual payment of one-sixth the actual value each twelve months.'' The agreement on the part of both, as expressed in the contract, is that the earnings of the stock, if declared surplus, shall remain with each share as surplus; and, if declared as a dividend, shall apply on each share as payment. The defendant further agreed in said contract to deliver to the plaintiff stock, in amounts of five or more shares, at any time that payment is made.

By the signing of the contract by the defendant and the acceptance of the contract by Garner, each party became mutually bound to the performance of the conditions therein contained. If the earnings of the stock should be declared as a dividend, the earnings of each share should, by the contract, be applied on that share as payment. Of course, it would go to the defendant, but to be applied by him as payment upon the share of stock. If there were earnings on the stock each year, declared as a dividend, and that amounted to one-sixth the value of the share, as fixed by the inventory of October 5, 1901, with interest, that would discharge the obligation for that particular share to the extent of one-sixth

of its value; and if dividends thereafter were declared from the earnings, equal to one-sixth of the inventory value of the stock, with interest, for each of the five years following, unquestionably, under this contract, the dividends would discharge and satisfy plaintiff's obligation to pay. The defendant in the contract agreed to deliver to the plaintiff stock in amount of five or more shares at any time payment was made. It does not designate how this payment is to be made. The contract shows that wherever the earnings are declared as dividends they shall be applied as payment on the stock. At the end of each particular year, the amount plaintiff would be required to pay in cash, if any, would depend upon the amount of earnings declared as dividends, which by the terms of the contract should be applied in payment of the stock.

The plaintiff's testimony tends to show that the defendant refused to disclose to him the amount received in this way, and that he was therefore in no position to make a tender to the defendant of the balance, and this would bring the plaintiff within the reason of the rule laid down in *McSweeney v. Kay*, 15 Grant, C. H. (U. C.) 432. In speaking of a tender in which it was claimed that the amount tendered was considerably less than the amount due, the court said:

It may be so, and probably was; but we have no reason to doubt that there was a *bona fide* desire and endeavor, on the part of McSweeney, to pay Kay all that was due him, and, if the whole amount due to Kay was not paid or tendered to him, it was because of his own default in not informing the plaintiff what was the amount really due. Without such information it was impossible for the plaintiff to know how much the defendant had expended (how much the defendant, in this case, had received in dividends), upon improvements; how much for insurance; and, on the other hand, how much he actually received, for it was only actual receipts that he was charged for rents. . . . Plaintiff endeavored to ascertain from the defendant what sum he was to pay, a fact known to the defendant and not known to the plaintiff, and

which plaintiff could not get· at by computation, but which depends upon facts peculiarly within the knowledge of the defendant. The defendant failed to give the required information and that advisedly, as appears by his answer; his position being that plaintiff's right of purchase was gone. I think that upon this the plaintiff stood excused from making any tender.

In this case, Garner claims that he desired to tender and pay the amount due, that this was *bona fide,* and that it was by reason of defendant's failure to disclose the amount that the tender was not made. · Plaintiff claimed in his petition that the dividends declared and paid upon the stock in question were greatly in excess of the price which plaintiff agreed to pay therefor, and that, by reason thereof, the stock was, at the time this action was commenced and long prior thereto, fully paid for, and this plaintiff sought to establish by his witnesses. He sought to show that, during the year 1902 up to 1909, inclusive, the company had declared dividends upon stock and the amount of such dividends; that the increase in the shares of stock was a stock dividend, declared by the company, and was issued as a stock dividend. He sought to show what dividends were declared and paid to the defendant, Kratzer, during these years, and the amount. He sought to show whether or not any of the net earnings during these years were ever declared surplus and to remain with the shares of stock as surplus, or whether they were declared as dividends, and paid, and how paid. All this, upon the objection of the defendant, the court excluded. In this we think there was error. As long as the contract remained in force and not repudiated by either party, that provision of the contract by which it was agreed that, if the earnings of the stock was declared as a dividend, it should apply as payment on each share, was binding upon both parties. Upon the payment in any of the ways provided in the contract, the plaintiff became entitled to such share and the defendant ·agreed to deliver to him

3. SAME: evidence.

the stock in amounts of five or more shares at any time that the payment was made.

For the error pointed out, the case must be reversed. We do not therefore enter upon a consideration of the defenses interposed by the defendant, for the reason that these were never reached in the trial of the cause; that the record so stood, at the close of plaintiff's testimony, with the evidence excluded as hereinbefore indicated, the motion to direct a verdict was properly sustained; but, for the error pointed out, the case is *Reversed* and *Remanded.* All concur.